UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| BONNIE SUE GARRISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:12-CV-172-BG |
| | ) | ECF |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Bonnie Sue Garrison filed this action *in forma pauperis* and pursuant to 42 U.S.C. § 405(g) complaining of a decision in which the Commissioner of Social Security denied her application for supplemental security income (SSI).  The undersigned has considered the parties' arguments, the administrative record, and the applicable law and now recommends that the district court affirm the Commissioner's decision and dismiss Garrison's Complaint.

## I.      Standards of Review

A claimant will qualify for benefits if he meets the statutory definition of "disabled." The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A) (2013).  A physical or mental impairment is one which "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id.*  A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The standard under which the Commissioner reviews a claim for SSI involves a five-step sequential evaluation.   20 C.F.R. § 416.920 (2013).   Under the sequential evaluation, an administrative law judge (ALJ) decides whether the claimant: (1) is not working in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals a listing in the regulations; (4) has an impairment that prevents him from doing past relevant work; and (5) has an impairment that prevents him from doing any other work.  *Id.*

The court's standard of review is deferential.  The court is limited to determining whether the decision is supported by substantial evidence from the record as a whole and whether the Commissioner applied the proper legal standards.  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

## II.    Facts

Garrison filed her application for SSI on September 30, 2010, when she was thirty-nine years old.  (Tr. 13, 273.)  She claimed she was limited in her ability to work as a result of hip and arm pain, depression, bipolar disorder, and attention deficit hyperactivity disorder (ADHD), and she subsequently, complained of left knee pain during doctor visits in November and December of 2010. (Tr. 123, 178, 198.)  At a hearing before the ALJ she attributed her inability to work to difficulties standing and problems with concentration.  (Tr. 275.)  She believed if she worked, she would become frustrated, "lose concentration," and experience an inability to stay on task.  (Tr. 285.)

After the hearing the ALJ entered a decision finding Garrison not disabled at the fifth step of the sequential inquiry.  (Tr. 13–23.)  He specifically determined that Garrison retained the ability to perform simple light work that would involve only superficial contact with coworkers and

supervisors and no contact with the general public; allow her to sit and stand at her option; not require climbing, crawling, kneeling, or squatting; and involve only occasional stooping and crouching.  (Tr. 17.)  Based on testimony from a vocational expert, the ALJ determined that Garrison could perform the requirements of small products assembler, assembly press operator, and folding machine operator.  (Tr. 22, 287.)

Garrison brings two points of error.  In her first point of error she claims the ALJ failed to comply with the Social Security Rulings because he failed to analyze (1) the frequency with which she would need to alternate between sitting and standing and (2) limitations related to her diagnosis of ADHD.  In her second point of error she claims the ALJ failed to comply with SSR 02-1p because he failed to consider the impact of her obesity on her ability to work.

## III.    Garrison's First Point of Error

Pointing to Social Security Ruling (SSR) 96-8p, Garrison contends the ALJ should have specified the frequency with which she would need to alternate between sitting and standing and the length of time she would need to sit during the work day as a result of her impairments.  She further contends that the ALJ should have included such limitations in the hypothetical question he posed to the vocational expert.  She argues that, had the ALJ done so, the vocational expert would have been able to determine the impact her limitations had on the occupational base.

Ruling 96-8P provides guidance as to the formulation of residual functional capacity (RFC). The ruling provides a definition of RFC: "RFC is what an individual can still do despite his or her impairments."  SSR 96-8P, 1996 WL 374184, at *2 (July 2, 1996).  The ruling directs that the RFC determination is a function-by-function assessment and must include consideration of work-related functions.  *Id*. at *3.  As Garrison points out, the ruling requires the ALJ to assess the claimant's capacity to perform each of the functions required at a particular exertional level in order

to determine "whether the individual is capable of doing the full range of work contemplated at the exertional level." *Id*.

Garrison's claim that the ALJ should have specified the frequency with which she would need to alternate between sitting and standing must be rejected on several grounds. First, the ALJ did not determine that Garrison could perform the full range of light work. He determined that she was capable of performing limited light work rather than the full range of light work, and he accommodated her limitations on a function-by-function level. (Tr. 17.) Second, nothing in Ruling 96-8P can be construed to require the ALJ to specify the frequency with which a claimant should be permitted to sit and stand during work when he determines that the claimant can perform work with a sit/stand option. Third, the ALJ, in fact, specified the frequency with which Garrison would need to sit and stand during the work day. He noted in his decision that he limited Garrison to light work "with the freedom to alternate positions as needed for comfort," and he asked the vocational expert to identify jobs that would allow an individual to "sit or stand at her option." (Tr. 21, 287.)

The ALJ, therefore, determined that Garrison was capable of working jobs that would allow her to determine the frequency with which she would need to alternate between sitting and standing. If Garrison needed to alternate between sitting and standing every fifteen minutes one day and sit for the entire work period the next day, she could do so because the frequency with which she could alternate between sitting and standing would be at her option or, put another way, at her "own volition." *See Wright v. Astrue*, No. 1:09-CV-0003, 2012 WL 182167, at *8 (M.D.N.C. Jan. 23, 2012) (holding that the reasonable implication of the ALJ's inclusion of a sit/stand option was that the plaintiff could alternate between sitting and standing at his own volition); s*ee also Ketelboeter v. Astrue*, 550 F.3d 620, 626 (7th Cir. 2008) (rejecting plaintiff's claim that the ALJ was required

to include in his hypothetical question the frequency with which the plaintiff would have to sit and stand; the ALJ included a sit/stand option in the hypothetical question).  Garrison's contentions that the ALJ was required to provide the  frequency with which she would need to alternate between sitting and standing is without merit.

Likewise, there is no merit to Garrison's contention that the ALJ failed to include limitations that would address her diagnosis of ADHD in his RFC determination.  Garrison specifically argues that the ALJ found her ADHD to be severe but did not incorporate limitations related to her ADHD at the fifth step of the sequential process.  She claims an inability to concentrate, focus, and complete tasks in a timely manner significantly erodes the occupational base and that inclusion of limitations related to her ADHD would have "changed the RFC from the limited range of light work to a much lower range of work."  (Pl.'s Br. at 35.)

A clamant's limitations are classified as exertional if they limit his or her ability to meet the strength demands of jobs in terms of sitting, standing, walking, lifting, carrying, pushing, and pulling.  20 C.F.R. § 416.969a(b).  In contrast, a claimant's limitations, including those related to concentration and attention, are classified as non-exertional.  20 C.F.R. § 416.969a(c)(ii).  As such, they are not factors in determining the exertional level of work a claimant can perform.  However, they may reduce a claimant's ability to perform certain types of jobs.  20 C.F.R. § 416.945(c).  Thus, any limitation from Garrison's ADHD would affect the types of jobs she could perform rather than at what exertional level she could work.  *Id*.  Garrison's suggestion that limitations related to her ADHD would have impacted the ALJ's finding that she could perform light work must therefore be rejected.

Nonetheless, the ALJ is required to incorporate mental limitations into his RFC

determination and the hypothetical question he poses to the vocational expert. *Bowling v. Shalala*, 36 F.3d 431, 436 (5thCir. 1994). The ALJ did so by limiting Garrison to simple work. (Tr. 17.) Nothing more was required. As the ALJ found, Garrison had only moderate difficulties in concentration, persistence, and pace. (Tr. 16.) This finding and the ALJ's determination that Garrison could perform simple work is supported by substantial evidence. Leela Reddy, M.D., a state agency physician, reviewed the medical evidence and determined that Garrison was only moderately limited in her ability to maintain attention and concentration for extended periods of time. (Tr. 207–09, 221.) State agency physicians "are experts in the Social Security disability programs." SSR 96–6p, 1996 WL 374180, at *2 (July 2, 1996). In addition, a counselor at a Mental Health and Mental Retardation (MHMR) office noted that Garrison's attention and concentration were "fair." (Tr. 137, 165.) Finally, Garrison's reports of her activities show that her concentration problems did not render her incapable of performing simple work. Garrison testified that she played bingo once a month and sat through church services that lasted one hour and forty-five minutes on a weekly basis. (Tr. 278–79.) Although she later testified that she "constantly 'move[ed] around and toss[ed] or turn[ed] during the church services, she did not claim she was unable to focus on the services or that she had to leave the services because of concentration or other problems. (Tr. 279–80.)

"Substantial evidence is more than a scintilla, less than a preponderance, and is such that a reasonable mind might accept it as adequate to support a conclusion." *Randall v. Astrue*, 570 F.3d 651, 662 (5th Cir. 2009) (quoting *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992)). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the ALJ's decision. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988).

Substantial evidence supports the ALJ's determination that Garrison could perform simple light work with the physical and postural limitations he included in his RFC determination and the question he posed to the vocational expert.

## IV.   Garrison's Second Point of Error

Garrison is five feet five inches tall, and her weight fluctuated between 205 and 270 between the time she filed her application for SSI and the date of the hearing.  (Tr. 123, 199, 259.)  She argues that the ALJ failed to properly consider her obesity and therefore ran afoul of SSR 02-01p.

Ruling 02-01p directs that the ALJ must consider the combined effect of the claimant's obesity with the claimant's other impairments at all stages of the sequential disability evaluation. *See* SSR 02-01p, 2000 WL 628049, at *3 (Sept. 12, 2002).  Thus, when determining the claimant's RFC, the ALJ must assess the effect a claimant's obesity has on his ability to perform routine movements and physical activity within the work environment.  *Id*. at *6.  The ruling directs that obesity may affect a claimant's ability to perform exertional functions and postural functions, such as climbing balancing, stooping, and crouching.  *Id*.

The ALJ considered Garrison's obesity and the effect her obesity had on her functional abilities throughout the sequential evaluation.  He determined at step two that her obesity was severe and determined at step three that her obesity did not, considered alone or in combination with her other impairments, meet the criteria of a listing in the regulations.  (Tr. 15.)  During his evaluation of Garrison's RFC at the fourth and fifth steps of the sequential evaluation, he incorporated postural limitations into his RFC determination after determining that Garrison's obesity resulted in limitations and likely exacerbated symptoms and limitations caused by her other impairments. (Tr. 17.)

On the other hand, the ALJ also determined that Garrison was able to "perform a wide

variety of daily activities despite her pain and obesity." (Tr. 20.) This determination and his determination that Garrison is not disabled is supported by substantial evidence. Garrison told health care staff that she was a "stay at home mom" and the primary caretaker of her two disabled children. (Tr. 191, 195–96; *see also* Tr. 238 (noting that one of her children moved to Arizona a few months before the hearing.) As the ALJ noted, "Caring for children, especially those with special needs, can be quite demanding both physically and emotionally, but the claimant was able to care for both children without any particular assistance." (Tr. 20.) In addition, during the time she claims she was disabled, Garrison reported that she decorated and was trying to open an interior design business; assisted her mother; did crafts, including painting, making Christmas bows, and growing flower bulbs; tanned daily at a tanning salon; and drove her children to school, cleaned, did laundry, and cooked simple meals. (Tr. 107–08, 201–02, 277–78.) In addition, near the time of the hearing Garrison reported to MHMR staff that she was involved in a six-month relationship and was engaged. (Tr. 237.) As the ALJ noted, the daily activities Garrison reported are not consistent with her allegations of disabling symptoms. (Tr. 20.)

The ALJ also found that Garrison's allegations were inconsistent with the medical evidence. As he noted, the medical records show that Garrison did not consistently report pain and "did not undergo the type of medical treatment one would expect for a disabled individual." (Tr. 19–20, 180, 184, 188–89, 258–59.)

"Obesity is not a per se disabling impairment." *Crossley v. Astrue*, No. 3:07-CV-0834-M, 2008 WL 5136961, at *5 (Dec. 5, 2008). As with all impairments, obesity will not render a claimant disabled unless it prevents him from performing any work at all. 42 U.S.C. § 1382c(a)(3)(B). Based on the evidence in this case, Garrison's obesity is not disabling. The ALJ accommodated Garrison's

limitations in the RFC determination by limiting her to light work that allowed her to sit and stand at her option; did not involve climbing, crawling, kneeling, or squatting; and involved only occasional squatting.  (Tr. 17, 20.)  He therefore determined that Garrison's obesity and other impairments affected her ability to sit, stand, climb, crawl, kneel, and squat.  Ruling 02-01p requires the ALJ do determine the impact the claimant's obesity has on his ability to perform routine movements and physical activity within the work environment.  *Id*. at *6.  The ALJ did so.  He did not commit legal error.

## V.   **Recommendation**

The Commissioner's decision of no disability must be affirmed if supported by substantial evidence.  *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).  Substantial evidence supports the Commissioner's decision in this case.  It is therefore recommended that the United States District Court **AFFIRM** the Commissioner's decision and **DISMISS** Garrison's Complaint.

## VI.   **Right to Object**

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within fourteen days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1) (2012); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are

accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v.*

*United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

     Dated:     July 24, 2013.

NANCY M. KOENIG
United States Magistrate Judge

10